UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

STEPHANIE L. MARTIN,

      Plaintiff,

v.                                Case No. 0:15-cv-61140-RNS

ALLIED INTERSTATE, LLC,
a Minnesota limited liability company;
and IQOR HOLDINGS US, INC., a
Delaware corporation,

      Defendants.

_____/

**DEFENDANTS ALLIED INTERSTATE LLC AND IQOR HOLDINGS US INC.'S
MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56**

Defendants, Allied Interstate LLC ("Allied") and iQor Holdings US Inc. ("iQor") (collectively, "Defendants"), by and through their undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby move for an order granting summary judgment to Defendants on all of the claims brought by Plaintiff Stephanie Martin ("Plaintiff").

**PRELIMINARY STATEMENT**

As discussed in Defendants' Motion For Rule 11 Sanctions For Pursuit Of A Frivolous Claim (Dkt 58) served on December 17, 2015 and filed contemporaneously with this motion, this case is a fraud and a sham.  Plaintiff filed this case under the pretense that she had nothing to do with eBay, and that Defendants broke certain federal and state laws by attempting to collect on an eBay account for which she was not responsible.  Defendants uncovered incontrovertible proof, however, that Plaintiff Stephanie Martin was not telling the truth when she averred that the eBay account was not hers.  Accordingly, rather than repeat that discussion herein,

Defendants respectfully refer the Court to the Rule 11 motion for a full recitation of the facts demonstrating that this case is a sham.  *See* Dkt. 58.

However, even accepting as true Plaintiff's new theory that she is the victim of identity theft, and even accepting that the eBay account was not hers, Plaintiff still has adduced no proof to sustain either her debt collection or Telephone Consumer Protection Act claims.  Plaintiff alleges that an identity thief had dealings with eBay, and after certain charges by eBay were unpaid, eBay referred the account to defendant Allied for collection.  Between December 2014 and January 2015, Allied made nineteen (19) calls to Plaintiff's cellular phone number, but never made direct contact with Plaintiff during any of the calls.

Plaintiff has alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Counts I and III), Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72 (Count II and IV), and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b) (Count V).

Summary judgment in favor of Defendants is appropriate.  First, Plaintiff's FDCPA claims fail because there was no transaction between the identity thief calling herself "Stephanie Martin" and the other unidentified eBay user, and therefore the sums obligated to pay eBay amount to a cancellation penalty not a consumer debt covered by the FDCPA.  Second, none of the specific claims under the FDCPA are supported by proof.  Third, the FCCPA claims should fail for the same reasons the FDCPA claims fail, and Plaintiff lacks standing in any event to bring a claim under the FCCPA.  Fourth, Plaintiff cannot demonstrate that Defendants violated the TCPA because the calls in question were manually dialed.  Even if they were not, Allied had a good faith belief that it had consent of Plaintiff to make the calls.  Fifth and finally, defendant iQor is not a proper defendant since it neither telephoned Plaintiff nor attempted to collect a debt.

## STATEMENT OF MATERIAL FACTS

1.      Plaintiff Stephanie Martin has resided at the following primary addresses from

May 30, 2013 to the present:

    a.    ████████████, Pompano Beach, FL 33062 (May 30, 2013 to June 30, 2014);

    b.    ████████████, Boca Raton, FL 33433 (June 30, 2014 – September 30, 2014); and

    c.    ████████████, Pompano Beach, FL 33062 (October 1, 2014 to the present).

(*See* Plaintiff's Responses to Allied's First Set of Interrogatories dated September 10, 2015, No.

10, a copy of which is attached as Exhibit 1; Deposition of Plaintiff Stephanie Martin dated Oct.

19, 2015 ("Martin Dep."), 48:3-49:2, which is attached as Exhibit 2).

2.      Plaintiff Stephanie Martin worked as a debt collector in 2003 but for the last

twelve years has run a business out of her home in which she manages internet search engines

for certain clients.  (Martin Dep., 16:10-18:23, 22:25-24:6, Ex. 2.)

3.      Plaintiff Stephanie Martin's mobile phone number is ████-1247, which is

serviced through a mobile phone provided AT&T Corp.  (Ex. 1, No. 14).

4.      On April 18, 2014, a person calling herself "Stephanie Martin" opened an account

with eBay Corporation ("eBay") referenced number ID E1240493129001-USD with the

following registration information:

    a.    User ID: ████████

    b.    E-mail: REDACTED @gmail.com

    c.    Address: ████████, Pompano Beach, FL 33062

    d.    Billing Address: ████████, Pompano Beach, FL 33062

    e.    Credit/Debit Card(s): xxxx9839, xxxx2030, and xxxx1398

    f.    Telephone number: ████-1247

(eBay Account Registration Information - eBay 00001-4, which is attached as Exhibit 3).

5.      On June 18, 2014, the person calling herself "Stephanie Martin" and an unknown

eBay user negotiated for the sale of an iPad Mini in connection with an eBay auction.  (eBay

transaction documents - eBay 00005-17, attached as <u>Exhibit 4</u>).

6.      The sale of the iPad Mini was never completed, and no funds were received by "Stephanie Martin." (*Id.*).

7.      On August 31, 2014, eBay sent "Stephanie Martin" an invoice statement of $58.87 reflecting the outstanding balance on the eBay Account arising out a returned item fee from the June 2014 incident (Item No. 301219217777) for a total of $43.23 and late payment fee of $15.64. ("Invoice").   (eBay transaction documents - eBay 00025-27, and Allied/Martin 000098-100 are attached as <u>Composite Exhibit 5</u>).

8.      eBay sent the same invoice statement to "Stephanie Martin" on September 30, October 31, November 30, December 31, 2014, and January 31, 2015.   (eBay transaction documents - eBay 00028-42, which is attached as <u>Exhibit 6</u>).

9.      eBay referred the Invoice to Allied for collection.  (Deposition of Vice President of Operations Jonathan Juarez dated Dec. 30, 2015 ("Juarez Dep."), 17:22-18:10, attached as <u>Exhibit 7</u>).

10.      On December 13, 2014, Allied sent the notice letter to Plaintiff at ██████████ ████████████████, Pompano Beach, FL 33062-3339 indicating that Allied was seeking to collect the debt of $58.87 with respect to the Invoice ("First Notice").   (Affidavit of Jonathan Juarez, Assistant Vice President of Operations, ¶4, attached as <u>Exhibit 8</u>; a copy of the First Notice is attached as <u>Exhibit 9</u>; Juarez Dep., 75:16-76:23, Ex. 7).

11.      Plaintiff did not receive mail at the ██████████████████, Pompano Beach, FL 33062-3339 until the end of December 2014.  (Martin Dep., 82:16-83:12, Ex. 2).

12.      After the First Notice was sent, Allied manually dialed Stephanie Martin's mobile phone number is ██████-1247 a total of nineteen (19) times on the following dates and times:

| Call No. | Date / Time | Call No. | Date / Time |
|---|---|---|---|
| 1 | 12/16/14 3:34 PM | 11 | 1/5/15 2:54 PM |
| 2 | 12/23/14 9:40 AM | 12 | 1/7/15 10:03 AM |
| 3 | 12/23/14 4:26 PM | 13 | 1/7/15 12:30 PM |
| 4 | 12/26/14 5:19 PM | 14 | 1/8/15 2:49 PM |
| 5 | 12/29/14 10:26 AM | 15 | 1/8/15 5:42 PM |
| 6 | 12/29/14 5:07 PM | 16 | 1/9/15 11:09 AM |
| 7 | 12/30/14 3:36 PM | 17 | 1/9/15 1:40 PM |
| 8 | 12/31/14 9:46 AM | 18 | 1/12/15 1:48 PM |
| 9 | 1/2/15 9:34 AM | 19 | 1/13/15 6:08 PM |
| 10 | 1/2/15 2:59 PM | | |

(Allied/Martin 0000001, 0000086 (Allied call log), attached as Composite Exhibit 10; Juarez Dep., 42:5-43:20, 91:4-8, Ex. 7).

13.     Allied did not speak with Plaintiff during any of the nineteen (19) calls, as the disposition for all nineteen (19) calls was either no answer or went to Plaintiff's answering machine.  (*See* Ex. 10; Juarez Dep., 91:4-8; Martin Dep. 117:14-16, Ex. 2).

14.     FaxZero has no record of transmitting a facsimile to Allied in December 2014. (Declaration of K. Savetz dated December 9, 2015, ¶ 7, which is attached as Exhibit 11).

15.     Allied has no record of receiving a facsimile from Plaintiff in December 2014. (Dkt. 1, Ex. D (email attached to Complaint denying receipt of fax); *see also* Juarez. Dep., 50:2-52:4, Ex. 7).

16.     On January 12, 2015, Plaintiff sent a cease and desist letter to Allied through via fax transmission through FaxZero.com to fax number 973-630-7015 ("Cease and Desist Fax"). (Ex. 11; Dkt. 1, Ex. B).

17.     Shortly after receipt of Plaintiff's Cease and Desist Fax on January 12, 2015, Allied ceased all phone calls to Plaintiff's mobile phone.  (*See* Juarez Dep., Ex. 7; *see also* Ex. 10) (call log reflecting no calls after January 13, 2015).

18.     After receiving bank records establishing that the eBay account was opened with one of Plaintiff's bank accounts, counsel for Defendants on December 16, 2015 asked Plaintiff's counsel to dismiss the case.  Defendants then served their motion for Rule 11 sanctions via email on December 17, 2015 at 1:35PM EST. (December 17, 2015 Email From Patrick G. Broderick, attached as Exhibit 12; *see also* Dkt. 58).

19.     Plaintiff Stephanie Martin emailed eBay at 3:01PM EST on December 17, 2015, providing information and asking certain questions about the eBay account registered to REDACTED @gmail.com.  (Ex. 5).

20.     eBay responded to Plaintiff Stephanie Martin on December 18, 2015 referring to "your account", and Plaintiff replied back to eBay that same day.  (*Id.*).

## LEGAL STANDARD

"'The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(a)."  *Biscayne Cove Condo. Ass'n., Inc. v. QBE Ins. Corp.*, 951 F. Supp.2d 1292, 1296 (S.D. Fla. 2013).

## ARGUMENT

## I.   NO CONSUMER DEBT IS IMPLICATED AND THEREFORE PLAINTIFF'S FDCPA CLAIMS FAIL

### A.   There Was No Underlying Transaction, And Therefore the FDCPA Does Not Provide Relief To Plaintiff

Even accepting Plaintiff's assertion that she was the victim of identity theft, the identity thief's dealings with eBay do not amount to a "transaction," and therefore Plaintiff has no claim under the FDCPA.  The FDCPA regulates collection of "debts," and debts are defined as:

> Any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family,

or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692(a)(5).   "Accordingly, the FDCPA and FCCPA apply only to payment obligations of a (1) *consumer* arising out of (2) *transaction* in which money, property, insurance, or services at issue are (3) *primarily for personal, family, or household purposes*.  The statute thus makes clear that the mere obligation to pay does not constitute a 'debt' under the FDCPA." *Oppenheim v. I.C. Systems, Inc.*, 627 F.3d 833, 837 (11th Cir. 2010) (emphasis in original).  A transaction under the FDCPA "must involve some kind of business dealing or other consensual obligation."  *Id.*, quoting *Hawthorne v. Mac Adjustment Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998).  "The FDCPA does not provide a cause of action against every attempt to collect on a debt."  *Helsel v. General Motors, LLC*, No. 1:12-cv-1184, 2013 WL 4049519, at *4 (N.D. Ohio Aug. 9, 2013).  Instead, the FDCPA "'limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.'"  *Id.*, 2013 WL 404519, at *4, quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997).

Plaintiff claims that eBay charged a "direct pay returned item" fee of $43.22, plus another "direct pay returned item fee" of $15.00 along with a $0.65 late fee for a total of $58.87, and that this $58.87 was sent by eBay to defendant Allied for collection.  *See* Ex. 5.  However, the above amounts do not arise out of any "transaction."  To the contrary, the identity thief (which Defendants assert is Plaintiff Stephanie Martin) on June 25, 2014 insisted that no transaction took place, since she never sent the iPad and the buyer never tendered the funds:

> Are you kidding me?  This woman harassed me and left me negative feedback.  I contacted her as soon as I found out a hold was placed on the funds.  That's not trying to scam someone.  I won't be shipping anything. You can cancel everything out.  I'm done with this.  I have no money to refund.  I never received it.  You know that.  Thanks.

eBay 000011-12, 000014, Ex. 4.   Thus, according to the identity thief, there was no transaction, and nothing was shipped.

Plaintiff Stephanie Martin agrees.   At her deposition on October 19, 2015, Plaintiff insisted that she never had any dealings with eBay.   Martin Dep., 68:13-71:1, Ex. 2.   On December 17, 2015, however, Plaintiff emailed eBay about the account.[1]   In her email, Plaintiff stated that no transaction had transpired:

> I am contacting you today about an account registered to REDACTED @gmail.com.   It has been turned over to a collection agency.   *First, I would like to point out that from your records, no transaction ever occurred on the account.*   That is, nothing was ever actually bought or sold via the account.   Per the FTC, a transaction occurs when goods or services are delivered to a person.   Per your own records, this did not occur.   Additionally, eBay drafted money via a reverse direct pay, on a pre-paid card *for a transaction that never occurred.*[2]

Allied/Martin 0000098 (emails between Plaintiff and eBay) (emphasis added), Ex. 5.

All parties therefore agree that there was no "transaction."   Thus, the amount charged by eBay and referred to Allied cannot be a "debt" governed by the FDCPA.   Plaintiff's claim closely resembles that of the plaintiff in *Helsel v. General Motors, LLC*, 2013 WL 4049519 (N.D. Ohio Aug. 9, 2013).   In that case, GM offered a discount plan to eligible employees for automobile purchases.   *Id.*, at *1.   After GM suspected fraudulent use of the discounts by persons not eligible, it sought reimbursement on the employee discounts and referred the unpaid sums to collection.   *Id.*   Plaintiffs brought a purported class action on behalf of certain GM employees,

---

[1] Plaintiff sent the email on December 17 after it became apparent that she no longer could deny her connection to the eBay account.   After Plaintiff's deposition on December 16, 2015, Defendants obtained documents from certain credit card companies pursuant to subpoena that indicated that the eBay account was linked to multiple bank accounts belonging to Plaintiff.   Ex. 12 (emails between counsel).   After Defendants served (but did not file) their Rule 11 motion for sanctions on December 17, Plaintiff started emailing eBay.   Ex. 5.

[2] Plaintiff's email to eBay is a party admission not excluded by the hearsay prohibition.   Fed. R. Evid. 801(d)(2)(A); *see also United States v. Brown*, 459 F.3d 509, 528 n.17 (5th Cir. 2006); *Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534, 568 (D. Md. 2007) (collecting cases).   Indeed, the eBay response email, in which it repeatedly refers to "your account" constitutes an adoptive admission against Plaintiff under Federal Rule of Evidence 801(d)(2)(B). *See United States v. Safavian*, 435 F. Supp.2d 36, 43-44 (D.D.C. 2006).

insisting that the collection efforts by GM and by its law firms violated the FDCPA. *Id.* GM moved to dismiss, arguing that GM was seeking reimbursement under the discount plan, and that the underlying transactions with third party purchasers were not at issue. *Id.* Even though sales of automobiles to ineligible persons had taken place, GM argued that there were no "transactions" *with plaintiffs* and therefore there were no "debts" as defined by the FDCPA. *Id.* at *4-5. The United States District Court for the Northern District of Ohio agreed, explaining that plaintiffs neither received any goods nor spent any money:

> Neither Plaintiffs' [First Amended Complaint] nor GM's Complaints in the underlying suits allege Plaintiffs purchased anything, nor do they contend that Plaintiffs expended any monies when third parties purchased GM vehicles. Thus, there were no 'transactions' between Plaintiffs and GM.

*Id.* at *5. The court in *Helsel* dismissed the claim, and this Court should do the same. Here, there was no sale at all, let alone a sale involving Plaintiff. Indeed, Plaintiff Stephanie Martin admitted in her email to eBay that no goods were sent nor were any monies received and that "no transaction ever occurred." The identity thief confirms this as well.

The amount charged by eBay can more accurately be described as a fine or penalty for *not* completing a transaction. Fines and penalties, however, do not meet the definition of "debt" because they lack the consensual nature of a transaction. *See* Oppenheim, 627 F.3d at 837 (referring to "consensual obligation"); *see also Surber v. McCarthy, Burgess & Wolff, Inc.*, No. 14-0309, 2015 WL 2190941, at *4 (S.D. Ala. May 11, 2015) (in case involving collection efforts arising out of overpaid insurance commissions, court grants summary judgment on FDCPA claim because "[a]lthough Plaintiff received money pursuant to a contract, this is not a consumer transaction involving the purchase of goods, services, or other item of value"); *Marfut v. City of North Point, Florida*, No. 8:08-cv-2006, 2009 WL 790111, at *8-9 (M.D. Fla. Mar. 25, 2009) (dismissing FDCPA claim because "[f]ines are not considered debts within the meaning of the

FDCPA because they are not the product of a consumer transaction"); *Durso v. Summer Brook Preserve Homeowners Assoc.*, 641 F. Supp.2d 1256, 1265 (M.D. Fla. 2008) (dismissing FDCPA claim based on homeowners association fines because "[t]he HOA fines were penalties against Plaintiff for violations of HOA rules and were not the result of a business dealing or an obligation to pay for goods or services"). As there was no transaction, and the eBay obligation amounts to a fine for not completing a transaction, there can be no "debt," and the Court should dismiss Plaintiff's FDCPA claims in their entirety.

> **B.    Even If Plaintiff Could Establish That Allied Collected On A "Debt," Plaintiff Can Adduce No Proof That The Debt Was For Personal, Family Or Household Purposes**

Even if there were a transaction and the eBay fine were a "debt" as defined by the FDCPA, Plaintiff cannot prove that this debt was for personal, family or household purposes as required by 15 U.S.C. 1692a(5), and therefore the claim fails. Plaintiff swore in her deposition that she had no knowledge of any eBay account nor did have any knowledge of the $58.87 reflected in the eBay invoices and in Allied's letter to her. Martin Dep., 68:13-71:1, 74:2-75:14, 77:14-18, Ex. 2. According to Plaintiff, she never participated in an eBay auction in her life. *Id*, 75:13-14. Plaintiff therefore cannot prove that the aborted eBay transaction for the sale of an iPad was for personal, family or household purposes.

Courts dismiss FDCPA claims brought by victims of identity theft because the plaintiffs cannot sustain their burden of proving that the debt was for personal, family or household purposes. *See Evenson v. Palisades Collection, LLC*, No. 2:13-cv-1226, 2015 WL 3466936, at *3 (S.D. Ohio June 1, 2015) (where plaintiff testified that the telephone account at issue was not her account, court dismissed FDCPA claim because plaintiff could not bear the burden of proving that the account was for personal, family or household purposes); *Horton v. Trans Union, LLC*, No. 12-2072, 2015 WL 1055776, at *5 (E.D. Pa. Mar. 10, 2015) (dismissing claim

by identity theft victim due to failure to prove that accounts involved a consumer debt); *Toroussian v. Asset Acceptance, LLC*, No. 12-03519, 2013 WL 5524831, at *6 (C.D. Cal. Oct. 4, 2013) (noting that "FDCPA plaintiffs who are victims of identity theft . . . may find it impossible to document the nature of the debt incurred," and dismissed the claim for lack of proof).

Indeed, given that the eBay sale was supposed to involve an iPad, a device that can be used for personal *or* commercial purposes, and given that Plaintiff has no knowledge of the transaction, Plaintiff's claim mirrors that of the plaintiff in *Evenson*, where the court considered the dual nature of the device at issue, "Plaintiff argues that the nature and amount of the debt permit an inference that the account was a personal account.  However, the account in question was a telephone account with AT&T.  Telephones are used by individuals for both business and personal reasons."  2015 WL 3466936, at *4.  The court in *Evenson* dismissed the FDCPA claim for lack of proof that the transaction was personal as opposed to commercial, and this Court should do the same.

## II.    EACH FDCPA CLAIM FAILS FOR LACK OF PROOF

Plaintiff asserts claims under 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.  (Complaint ¶ 46.)  Plaintiff lacks proof on all of these claims, and the Court therefore should dismiss the FDCPA claims in their entirety.

### A.    The Court Should Dismiss The 1692d Claim Because Less Than 20 Unanswered Telephone Calls Over 28 Day Period Cannot Support A Finding Of Harassment

#### 1.    The Number Of Calls Does Not Rise To The Level Of Harassment

Allied manually called Plaintiff's mobile phone nineteen (19) times within a 28-day time period, and ceased all calls on January 13, 2015 upon receipt of Plaintiff's Cease and Desist Fax. All parties agree that no conversation ever took place between Allied and Plaintiff.   Given these facts, the frequency of the communications—nineteen (19) *unanswered* calls over the course of

four weeks—is not sufficient to be considered harassing or abusive under Section 1692d as a matter of law.   *See Arianas v. LVNV Funding LLC*, No. 8:14-CV-01531-T-27, 2015 WL 5038269, at *6 (M.D. Fla. Aug. 25, 2015) (citing *Desmond v. Accounts Receivable Mgmt., Inc.,* 72 So.3d 179, 181 (Fla. 2d DCA 2011) (eighteen calls insufficient as matter of law to violate FCCPA); *Waite v. Financial Recovery Services, Inc.*, No. 8:09-cv-02336, 2010 WL 5209350, at *4-5 (M.D. Fla. Dec. 16, 2010) (29 calls in single month, along with several other calls in subsequent months, did not evidence "annoying, abusive or harassing" activity by defendant); *Tucker v. CBE Group, Inc.*, 710 F. Supp.2d 1301, 1305 (M.D. Fla. 2010) (fifty seven calls not sufficient to sustain 1692d claim).   Simply put, Allied did not call Plaintiff enough times to violate Section 1692d, and the Court should dismiss this claim as a matter of law.

**2.    The Record Suggests That Plaintiff's Letter Of December 24, 2014 Was Not Sent, And In Any Event, There Is No Proof That Allied Received This Letter**

The Section 1692d hinges on a December 24, 2014 cease and desist letter Plaintiff claims to have faxed to Defendant Allied. (Dkt. 1, Ex. A).  Plaintiff swore she sent the fax shortly after receiving her first telephone call from Allied, but that Allied continued to call her even after receiving the fax.  Plaintiff claims she used a service called "FaxZero" to send the fax.

Allied never received the fax.  Tellingly, the alleged December 24, 2014 fax lacks the fax imprint found on the January 12, 2015 fax that Allied agrees it received.  *Compare* Complaint, Ex. A *with* Complaint, Ex. B; *see also* Martin Dep., 89:10-22, Ex. 2.  Indeed, in response to a subpoena, FaxZero has sworn that its records do not reflect any fax sent on December 24 to Allied.  Ex.11.  On the other hand, FaxZero does have a record of the subsequent January 12, 2015 fax from Plaintiff to Allied.  *Id.*

In any event, Plaintiff cannot sustain a claim under Section 1692d because there is no proof that defendant Allied received the December 24 cease and desist letter.  *See Mammen v.*

*Bronson & Migliaccio, LLP*, 715 F. Supp.2d 1210, 1219 (M.D. Fla. 2009) (rejecting 1692d claim by identity theft victim, reasoning that "although Plaintiff mailed a letter dated 12/2003 to Defendant Bronson telling Defendant to cease communication, there is no evidence that Defendant received the letter until 6/2004").

    **B.**    **The Court Should Dismiss The 1692e Claim Because Allied Never Made A False Representation About The Character, Amount or Status Of The Debt**

Plaintiff cannot sustain the claim under 15 U.S.C. § 1692e because there is no allegation let alone proof that Allied made any false representations about the debt. Plaintiff has claimed that she did not owe any money to eBay, but this does not mean that Allied's attempts to collect were misleading. "Courts have held 'that the allegation that the debt sought to be collected is not owed, standing alone, cannot form a basis for a 'false and misleading practices' claim under the FDCPA.'" *Reed v. AFNI, Inc.*, No. 2:09-cv-459, 2011 WL 112430, at *2 (D. Utah Jan. 13, 2011). For this reason, courts dismiss Section 1692e claims brought by identity theft victims for lack of proof of misleading statements. *See Story v. Midland Funding LLC*, No. 3:15-cv-00194, 2015 WL 7760190, at *7 (D. Or. Dec. 2, 2015) (granting summary judgment on claim brought by identity theft victim because defendant's "communications regarding that debt are not deemed false, misleading, or deceptive simply because the alleged debt was incurred through identity theft"); *Reed*, 2011 WL 112430, at *2 (same); *Mammen v. Bronson & Migliaccio, LLP*, 715 F. Supp.2d 1210, 1219-20 (M.D. Fla. 2009) (rejecting claim by identity theft victim that statement stating that plaintiff owed the debt was misleading); *Richeson v. Javitch, Block & Rathbone, LLP*, 576 F. Supp.2d 861, 867 (N.D. Ohio 2008) (rejecting 1692e claim by identity theft victim, finding that debt collector had no duty to investigate before initiating collection efforts).

    **C.**    **The Amount Allied Attempted To Collect Is Not Disputed, And Plaintiff Therefore Has No Claim Under Section 1692f**

Plaintiff claims that Allied violated Section 1692f(1), which forbids, "The collection of any amount (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).   However, Plaintiff does not dispute that the $58.87 is the amount sought by eBay due to the failed transaction.  *See* Ex. 5.  Indeed, eBay itemized how the $58.87 was computed.  Exs. 3-4.  As an identity theft victim with no knowledge of eBay generally or this transaction in particular, Plaintiff is no position to dispute this amount.  Accordingly, the Court should grant summary judgment on this claim.  *See Story*, 2015 WL 7760190, at *7 (finding a failure to state 1692f claim "because the amount of the debt that [defendant] attempted to collect is undisputed"), *citing to Taylor v. Midland Credit Mgmt., Inc.*, No. 1:07-cv-582, 2008 WL 544548, at *4 (W.D. Mich. Feb. 26, 2008) ("[W]here the amount being collected by the collection agency was not different than the amount owed, §1692f(1) was inapplicable to the . . . claim that the collection agency was attempting to collect the debt from the wrong person").

### D.    Allied Complied With 1692g By Sending A Debt Validation Letter

Plaintiff's final FDCPA claim is that Allied failed to send a debt validation letter as required by 15 U.S.C. § 1692g.  Not true.  A copy of the letter is attached hereto as Exhibit 9.  Allied's corporate representative has sworn that it was mailed on December 13, 2014.  Ex. 8; Juarez Dep., 75:16-76:23, Ex. 7.  Plaintiff has admitted that the North Riverside address to which the debt validation letter was sent is her address.  Martin Dep. at 79:17-20, Ex. 2.

Plaintiff cannot rebut any of this evidence.  Plaintiff denies she ever received the letter (*Id*. at 79:24-25, Ex. 2), but Plaintiff also admits that she was not receiving *any mail* at this time due to a problem with the post office.  *Id.* at 82:16-83:12.

Regardless, "[i]t is not relevant that Plaintiff did not *receive* the notice because § 1692g(a) requires only that the debt collector *send* the notice."  *Perry v. Trident Asset Mgt. LLC*,

No. 4:14-1004, 2015 WL 417588, at *4 n.2 (E.D. Mo. Feb. 2, 2015) (emphasis in original) (collecting cases).  Here, the uncontroverted evidence is that Allied sent the December 13 letter, and the Court therefore should grant summary judgment on the Section 1692g claim.

## III.     PLAINTIFF'S FCCPA CLAIMS ALSO FAIL

### A.     Courts Interpret The Florida Consumer Collection Practices Act Along With The FDCPA

In assessing claims under the Florida Consumer Collection Practices Act ("FCCPA"), Florida courts apply the same standards applicable "in precedent interpreting the FCCPA's federal counterpart, the [FDCPA]."  *Trent v. Mortgage Elec. Registration Sys.,* Inc., 618 F. Supp. 2d 1356, 1360 (M.D. Fla. 2007) (acknowledging that "when applying the provisions of the FCCPA, 'great weight shall be given to the interpretations of . . . the federal court relating to the [FDCPA]'") (quoting §559.77(5), Fla. Stat. (2014)).   Accordingly, for the reasons set forth above, the Court should dismiss the FCCPA claims along with the FDCPA claims.

### B.     According To Her Version Of The Facts, Plaintiff Is Not A Debtor, And She Therefore Lacks Standing To Assert An FCCPA Claim.

The Florida Consumer Collection Practices Act provides that a "debtor" may bring an action against a person who violates Fla. Stat. § 559.72.  The plain, unambiguous language of the FCCPA is clear: "debtor" is defined as "any natural person obligated or allegedly obligated to pay a debt." *Id.* at § 559.55(8). The same statutory section also clearly and plainly limits the definition of "debt" to an obligation or alleged obligation "to pay money arising out of a transaction." *Id*. at § 559.55(6).

Plaintiff Stephanie Martin lacks standing under the FCCPA because she is claiming that an identity thief incurred the obligation to eBay.  According to her story, Plaintiff never had any dealings with eBay.  Because Plaintiff alleges that she is not legally obligated to pay, she is not a "debtor" under the plain language of the FCCPA.   Indeed, district courts in this circuit have

found that a plaintiff that alleges not "to be obligated to pay the [alleged debt], ... [is] not a debtor[] under the FCCPA, and … do[es] not have standing to pursue claims for violations of the FCCPA." *Belin v. Litton Loan Servicing, LP*, 2006 WL 1992410, *7 (M.D. Fla. July 14, 2006) (dismissing for lack of standing FCCPA claims asserted by plaintiffs that were not obligated on the underlying debt), *accord Petitt v. U.S. Bank Nat'l Ass'n*, No. 8:14–cv–961–T–33TGW, 2014 WL 3053240, *5 (M.D. Fla. July 7, 2014) (Petitt fails to allege that she is obligated to pay a debt, and therefore has insufficiently demonstrated that she has standing to pursue a claim for violations of the FCCPA); *Condon v. Global Credit & Collection Corp.*, 2010 WL 5071014, *6 (M.D. Fla. Dec. 6, 2010) ("[T]he FCCPA is not actionable because the plaintiff is not alleged to owe any debt to the defendant"). Plaintiff Martin likewise lacks standing to pursue this claim against Allied for violations of the FCCPA, and, this claim should be dismissed with prejudice.

### C.     The Court Should Dismiss The Punitive Damages Claim Under the FCCPA

Defendants reasonably relied on information from eBay in making the collection calls to Plaintiff and did not act with malice, and therefore there is no evidence to sustain a claim for punitive damages under the FCCPA.  "To receive punitive damages on a FCCPA claim, the plaintiff must prove defendant acted with 'malicious intent.'"  *Arianas v. LVNV Funding LLC*, 307 F.R.D. 615, 619 (M.D. Fla. 2015), quoting *Tallahassee Title Co. v. Dean*, 411 So.2d 204, 205 (Fla. 1st DCA 1982).  Here, nothing in the record indicates that Allied did anything other than try to collect on a debt it believed to be valid.  Accordingly, the Court should dismiss the punitive damages claim.  *See Crespo v. Brachfeld Law Group*, No. 11-60569, 2011 WL 4527804, at *6 (S.D. Fla. Sept. 28, 2011) (dismising FCCPA punitive damages claim).

### IV.    ALLIED NEVER CALLED PLAINTIFF'S CELLULAR PHONE WITH AN AUTOMATIC DIALING TELEPHONE DIALING SYSTEM, AND THEREFORE THE TCPA CLAIM HAS NO MERIT

To substantiate a claim under the TCPA, a plaintiff must prove that: "(1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012).

**A.     Allied Placed The 19 Calls To Plaintiff Manually**

Allied called Plaintiff manually and did not use an automatic dialing telephone dialing system ("ATDS"), and therefore the TCPA claim fails.   Plaintiff seeks to recover under 47 U.S.C. § 227(b)(1)(A)(iii), which restricts calls to cellular phones using an automatic telephone dialing system ("ATDS").   Specifically, the TCPA prohibits using an ATDS to make non-emergency calls to a wireless telephone number without the prior express consent.  *Id.*

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  "A system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it."  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).  However, the definition of an ATDS does not encompass every piece of equipment that could conceivably be modified to be an ATDS, especially when the equipment requires human intervention to make the calls.  *See Gragg*, 995 F. Supp. 2d at 119293; 2015 FCC Order ¶¶ 16–18.

The FCC has made clear that the capacity to dial telephone numbers automatically—that is, without human intervention—is an essential feature of an ATDS.  *See* FCC 2015 Order ¶¶ 14, 17.  The Eleventh Circuit has deferred to FCC interpretations of the TCPA.  *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014).  The capacity to dial telephone numbers without human intervention is an essential feature of an ATDS.  *See, e.g., Wilcox v. Green Tree Servicing, LLC*, No. 8:14-cv-1681, 2015 WL 2092671, at *5 (M.D. Fla.

May 5, 2015) ("[T]he key feature of an ATDS is the capacity to dial numbers without human intervention") (citing cases).

Allied has proffered sworn testimony that the calls made to Plaintiff were done manually. Assistant Vice President of Operations Jonathan Juarez explained that, because the telephone number on the eBay account was marked as a cellular number, Allied made the calls manually:

> Q.  Do you know specifically in this case that this was a manual phone call?
> A.  It had to be.  That's the only way we dial.
> Q.  It's your testimony that you do not use any auto dialers?
> A.  Not on cell phones, sir, no.
> Q.  You do on other kinds of calls?
> A.  Home telephone numbers we're permitted to, sir.
> Q.  How would you know that the number you were given was a cell phone?
> A.  Based on the information eBay provides us.

*See* Juarez Dep., 43:15-25, Ex. 7.  On the strength of this kind of evidence, courts grant summary judgment on TCPA claims based on calls made manually.  *See Estrella v. LTD Financial Services, LP*, No. 8:14-cv-2624, 2015 WL 6742062, at *3 (M.D. Fla. Nov. 2, 2015) (granting summary judgment where defendant witness testified that calls were manual and there was "no evidence in the record demonstrating the type or the brand of equipment Defendant used to call Plaintiff's cellular phone); *Gaza v. LTD Fin. Servs., L.P.*, No. 8:14-CV-1012-T-30JSS, 2015 WL 5009741, at *1, 4 (M.D. Fla. Aug. 24, 2015) (granting summary judgment because "the agent selected the number to be called and the calls were [thus] made as a result of human intervention"); *Dennis v. Reg'l Adjustment Bureau, Inc.*, No. 09-61494-CIV, 2010 WL 3359369, at *3 (S.D. Fla. July 7, 2010) (granting summary judgment as to manually dialed calls).

Plaintiff's conclusory statement in her deposition that she "heard an auto dialer" is not sufficient.  *See* Martin Dep. 86:9-87:3, Ex. 2.  Plaintiff never worked for Allied or iQor and has no basis for claiming that the calls were not manual.  *See Estrella*, 2015 WL 6742062, at *3-4

("there is no foundation . . . for Plaintiff's conclusion that 'clicks and delays' and 'prolonged silences' means that an ATDS or predictive dialer was being used . . . .").

### B.     Allied Had A Good Faith Belief It Had The Consent Of Plaintiff To Make The Calls To The Cellular Telephone

The Eleventh Circuit has held that where a debtor provides a cellular phone number to a creditor, and the account subsequently is referred to collections, the defendant debt collector is deemed to have consent to call the debtor on that number under the TCPA.   *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1125-26 (11th Cir. 2014).   Here, under Plaintiff Stephanie Martin's version of the facts, an identity thief provided her cellular phone number to eBay, and that she herself never consented to be called on her cellular phone.   However, eBay registered the account with Plaintiff's cellular phone number.   eBay 000001, Ex. 3.   Allied received the cellular phone number from eBay.   *See* Juarez Dep. at 43:23-25, Ex. 7.

This situation resembles that of *Danehy v. Time Warner Cable Enterprises*, No. 5:14-cv-133, 2015 WL 5534094, at *6-7 (E.D.N.C. Aug. 6, 2015).   In that case, an unidentified customer provided a phone number to defendant Time Warner.   *Id.*, at *1.   Unknown to Time Warner, at some point in time, this phone number was reassigned to the plaintiff.   *Id.*   The district court granted summary judgment on the TCPA claim and discussed whether the unknown customer's consent could operate as consent as to the plaintiff:

> Even assuming that the prior consent of TWC's Customer did not operate as consent by plaintiff, it is undisputed that defendant believed in good faith not only that it did have consent to call the 704-421-6235 number, but also that the calls were being made for a service TWC's Customer had requested. . . . Under the circumstances presented, defendant's good faith belief that it had consent to call the 704-421-6235 number would make imposition of liability under section 227(b) unjust.

*Id.*, at *6-7 (citing to *Chyba v. First Fin. Asset Mgmt., Inc.*, No. 12-cv-1721, 2014 WL 1744136, at *12 (C.D. Cal. Apr. 30, 2014)).   The same is true here.   Allied had no reason to believe that

Plaintiff did not consent to be called, and this Court therefore should dismiss the TCPA claim.

## V.       DEFENDANT IQOR HOLDINGS US, INC. IS NOT A PROPER DEFENDANT

The only evidence against iQor are certain emails attached to the Complaint.  (Dkt. 1, Ex. C & D).  Defendant iQor is not a proper defendant herein for several reasons.  First, iQor incorporates by reference all of the arguments made herein on behalf of defendant Allied. Second, iQor never telephoned Plaintiff.  Martin Dep. at 125:16-126:6, Ex. 2.  Accordingly, Plaintiff has no claim against iQor under the TCPA.  Third, there is no FDCPA claim because these emails were sent *in response* to Plaintiff's emails regarding the calls by Allied.  As such, they are not attempts to collect a debt by iQor, and the FDCPA claims must be dismissed. *See Styrczula v. Pierce & Assocs.*, No. 14-cv-2642, 2014 WL 5420272, at *5 (N.D. Ill. Oct. 22, 2014) (dismissing FDCPA claim where the "email was not an attempt to collect a debt"); *Peters v. Roberts Markel, PC*, No. 11-331, 2012 WL 2190563, at *12 (D. Hawaii June 13, 2012) (as email was sent in response to plaintiff, "[n]o reasonable juror could find that that email was attempting to collect a debt").  Finally, there is no proof that iQor directed the activity of defendant Allied, and therefore cannot be held liable for Allied's conduct.  Plaintiff must make "a showing of more than simply the existence of a parent-subsidiary relationship." *Colman v. N. Shore Health Sys.*, No. 97-cv-1871, 1998 WL 34077715, at *3 (E.D.N.Y. July 2, 1998).  Rather, Plaintiff must show that iQor and Allied "constitute a single economic enterprise . . ." and that iQor controlled almost all aspects of Allied debt collection.  *Id.*  Plaintiff can adduce no proof that iQor controlled Allied, and therefore this Court should dismiss iQor from this action.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment on all claims to Defendants.

## REQUEST FOR HEARING

Pursuant to Local Rule 7(b)(2), Defendants respectfully request a hearing on their motion for summary judgment.  Given the nature of Plaintiff's FDCPA and TCPA allegations (*e.g.*, particularly that she has been a victim of identity theft for the debt at issue, which Defendants dispute), and given that Defendants are filing a motion for sanctions connected to these issues, a hearing could be of benefit to the Court.  Defendants estimate sixty (60) minutes for the hearing.

Dated:  January 11, 2016

Respectfully submitted,

/s/ *Patrick G. Broderick*
Patrick G. Broderick
FLORIDA BAR NO.:  88568
Email: broderickp@gtlaw.com
GREENBERG TRAURIG, LLP
777 S. Flagler Drive, Suite 300 East
West Palm Beach, FL 33401
Phone: (561) 650-7915

 -and-

John Wirthlin
FLORIDA BAR NO.:  0085587
Email: wirthlinj@gtlaw.com
GREENBERG TRAURIG, LLP
625 E. Twiggs Street, Suite 100
Tampa, FL  33602
Phone: (813) 318-5700

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2016, a true and correct copy of the foregoing was served via electronic mail to the following:

J. Frazier Carraway
E-mail: fcarraway@saxongilmore.com
Claire M. Brueck
E-mail: cbrueck@saxongilmore.com
SAXON GILMORE & CARRAWAY, P.A.
201 E. Kennedy Blvd., Suite 600
Tampa, Florida 33602

*Counsel for Plaintiff Stephanie Martin*

/s/ *Patrick G. Broderick*