United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Stephanie L. Martin, Plaintiff )<br>)<br>v. )<br>)<br>Allied Interstate, LLC and IQOR )<br>Holdings US, Inc., Defendants ) | Civil Action No. 15-61140-Civ-Scola |

### Order Granting Motion for Summary Judgment

The Plaintiff sued the Defendants for alleged violations of the Fair Debt Collections Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55, *et seq.*, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. This matter is now before the Court on the Defendants' Motion for Summary Judgment (ECF No. 60) and Motions to Supplement their Rule 11 Motion (ECF Nos. 65, 77). Also pending is the Plaintiff's Motion to Voluntarily Dismiss Without Prejudice (ECF No. 85). For the following reasons, the Plaintiff's motion to dismiss is **denied**, the Defendants' motions to supplement are **denied**, and the Defendants' motion for summary judgment is **granted**.

1. **Background**

On December 23 2014, the Plaintiff received two calls from Defendant Allied Interstate LLC ("Allied"). Allied was seeking to collect on an alleged debt that "Stephanie Martin" owed eBay Inc. ("eBay"). The Plaintiff, however, asserts that she has never had an eBay account or transacted any business with eBay. The Plaintiff claims that the eBay account must have been opened fraudulently.

On December 24, 2014, the Plaintiff faxed Allied a cease and desist letter through the online fax company FaxZero. The letter stated that the Plaintiff did not owe a debt and requested that Allied stop calling her cell phone. Although the Plaintiff received an email receipt from FaxZero stating that her fax was sent and received by Allied, FaxZero currently has no record of the fax and Allied's corporate representative and Vice President of Operations, Jonathan Juarez, claims that it was never received. Juarez, however, is unsure of how faxes to the company are received and recorded. Between December 26, 2014 and January 12, 2015, Allied called the Plaintiff's cell phone fifteen times. Most

of the calls went unanswered, but the Plaintiff states that she answered at least one call and "heard an auto dialer." (ECF No. 60–2, Martin Dep. 86:9–14.)

On January 12, 2015, the Plaintiff faxed another cease and desist letter. The letter informed Allied that the Plaintiff had retained an attorney to pursue TCPA and FDCPA violations and requested that Allied contact her within seventy–two hours to settle the matter. The Plaintiff received a receipt from FaxZero that the fax was sent and received. The Plaintiff also completed a form on Allied's website containing the same information. The same day, the Plaintiff received an email from advocacy.group@allied-interstate.com confirming the receipt of her complaint. Although the email was from an Allied email address, the email was signed by an employee from Defendant iQor Holdings US, Inc. ("iQor") and also included the email address Advocacy.Group@iQor.com.

On January 13, 2015, Allied placed another call to the Plaintiff. On January 15, 2015, the Plaintiff received an email from Brendan Lee, the Vice President of iQor's legal department claiming that Allied had never received the Plaintiff's December 24, 2014 fax and that Allied was ceasing all collection efforts regarding the eBay debt. The Defendants further assert that Allied sent the Plaintiff a debt verification letter on December 13, 2014. The Plaintiff never received the letter.

On May 29, 2015, the Plaintiff sued the Defendants for violations of the FDCPA, FCCPA, and TCPA. (ECF No. 1.) On January 11, 2016, the Defendants filed their motion for summary judgment and motion for sanctions for filing a frivolous suit. (ECF Nos. 58, 60.) To the motion, the Defendants attached records obtained from eBay which they claim provides "incontrovertible proof . . . that Plaintiff Stephanie Martin was not telling the truth when she averred that the eBay account was not hers." (*See* ECF No. 60 at 1.) After their original Rule 11 motion, the Defendants filed two motions to supplement, which included additional "incontrovertible evidence." (ECF Nos. 65, 77.)

On March 9, 2016, the Plaintiff's attorney moved to withdraw. (ECF No. 79.) The Court granted the motion and gave the Plaintiff until April 22, 2016 to obtain new counsel. (ECF No. 81.) The Plaintiff elected to proceed *pro se* and moved to voluntarily dismiss the case without prejudice "so it c[ould] be filed again as a class action." (ECF No. 85.)

2.   **The Plaintiff's Motion to Dismiss**

Under Federal Rule of Civil Procedure 41(a)(2), a plaintiff who wishes to voluntarily dismiss a case after the defendant has filed an answer or motion for summary judgment must seek leave from the district court. "[A] plaintiff may ask the court to dismiss an action at any time." *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1276 (11th Cir. 2012). However, "[a] voluntary dismissal

without prejudice, however, is not a matter of right," *Fisher v. P.R. Marine Mgmt., Inc.,* 940 F.2d 1502, 1502 (11th Cir. 1991) (per curiam), and falls within the sound discretion of the district court, *see Stephens v. Ga. Dep't of Transp.*, 134 F. App'x 320, 323 (11th Cir. 2005).

The purpose of Rule 41(a)(2) "is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Id.* (quoting *McCants v. Ford Motor Co., Inc.,* 781 F.2d 855, 856 (11th Cir. 1986)). "The crucial question to be determined is whether the defendant loses any substantial right by the dismissal." *Global Aerospace, Inc. v. Platinum Jet Mgmt., LLC,* No. 09–60756–civ, 2011 WL 1342993 at *2 (S.D. Fla. Apr. 6, 2011) (Cohn, J.) (internal citations and quotations omitted). "While the district court "should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for protection of defendants," *id.* (quoting *Fisher*, 940 F.2d at 1503), the court should also weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate, *id.* (quoting *McCants*, 781 F.2d at 857).

Here, the Plaintiff seeks to dismiss this case so that she may refile it as a class action. In July 2015, as part of the parties' joint scheduling report, the Plaintiff agreed that additional parties would need to be added to the action and failed to join any additional parties or pursue a class action before the deadlines set out in the Court's scheduling order. (ECF Nos. 8, 11.) Furthermore, this litigation has been going on for over a year, with extensive discovery, multiple hearings before a magistrate judge, and a fully–briefed motion for summary judgment. The Defendants have expended considerable time and expense litigating this case. *See Stephens*, 134 F. App'x at 323 (finding that the district court did not abuse its discretion in denying a motion for voluntary dismissal when the case was pending for two years, "numerous motions had been filed, extensive discovery had been produced, and motions for summary judgement were pending"); *see also McBride v. JLG Indus., Inc.*, 189 F. App'x 876, 877–78 (11th Cir. 2006). Most importantly, there appears to be evidence that the Plaintiff may have engaged in misconduct in this case, and she currently faces Rule 11 sanctions. The Court fears that the Plaintiff is using this dismissal to escape a finding of misconduct or a ruling against her on the merits. Finally, even if the Court were to grant the Plaintiff's motion, it would be under the condition that the Plaintiff would pay the Defendants' considerable fees and costs. The Plaintiff does not appear able to pay these fees, making such a condition worthless.

Therefore, although the Court notes that this is a close case, after considering Rule 41(a)(2) and the relevant case law, only a dismissal with

prejudice would be appropriate at this juncture. Accordingly, the Court denies the Plaintiff's motion.

### 3.     The Defendants' Motion for Summary Judgment

The Defendants argue that they are entitled to summary judgment because the "incontrovertible" eBay evidence establishes that the Plaintiff owes the alleged debt and the evidence fails to support any violations of the FDCPA, the FCCPA, or the TCPA. (ECF No. 60 at 1–2.)

#### a.     Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)).  At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).  Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011).  Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586.

### b. The eBay Evidence

As previously mentioned, the Defendants relied heavily on documents from eBay in their motion for summary judgment. These documents provide information regarding the eBay account which accrued the debt in question, including physical addresses, email addresses, telephone numbers, and bank accounts associated with the "Stephanie Martin" who opened the account. The documents also detail how "Stephanie Martin" used the eBay account, and that the debt in question was incurred through the sale of an iPad. The Plaintiff has objected to this evidence, claiming that it is hearsay and unauthenticated. (*See* ECF No. 67 at 1–6, 16–17.) In their reply, the Defendants fail to respond to the Plaintiff's objections.

Federal Rule of Civil Procedure 56(e) requires that "affidavits" and documents that support or oppose a motion for summary judgment "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence." Therefore, "[t]he general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'" *Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). However, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" *Id.*

Similarly, a court may consider unauthenticated evidence on a motion for summary judgment if the evidence is unchallenged or "where it finds that those records could be reduced to admissible evidence at trial." *Mims v. Old Line Life Ins. Co. of America*, 46 F.Supp.2d 1251, 1259–60 (M.D. Fla. 1999); *see also Homes v. City of Atlanta*, No. 08–cv–3560, 2010 WL 1328713, at *1–2 (N.D. Ga. Jan. 27, 2010) ("[I]n order for a *document* to be considered on a motion for summary judgment, it must be authenticated by an affidavit that meets the requirements of Rule 56(e) of the Federal Rules of Civil Procedure, or otherwise authenticated pursuant to the Federal Rules of Evidence."). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Riley v. Univ. of Ala. Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1186 (N.D. Ala. 2014) (quoting Fed. R. Civ. P. 56 advisory committee note to the 2010 amendments).

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "Hearsay is inadmissible unless the statement is not hearsay as provided by Rule 801(d), or falls into one of the hearsay exceptions enumerated in Rules 803, 804, and 807." *United States v. Baker,* 432 F.3d 1189, 1203 (11th Cir. 2005).

Here, it is clear that the eBay documents are hearsay—they were created by eBay and are being used by the Defendants to establish the truth of the matter asserted, namely that the Plaintiff is the individual who created the account, as well as detailing how the account was used. *See* Fed. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Although the Federal Rules of Evidence recognize an exception to the hearsay rule for records of regularly conducted activity, the Defendants have offered no explanation on how they could or would satisfy this, or any other, hearsay exception at trial. For example, the Defendants chose not to depose a corporate representative of eBay or submit an affidavit or declaration by an eBay employee authenticating the documents. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir, 2012) (recognizing that "[t]he most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial," but noting that the record "contain[ed] no indication" that such a witness would testify). "The possibility that unknown witnesses will emerge to provide testimony on this point is insufficient to establish that the hearsay statement could be reduced to admissible evidence at trial." *Id.* Therefore, the Court will not consider the eBay documents in ruling on the motion for summary judgment.[1] *See Homes,* 2010 WL 1328713 at *2.

    c.    **The FDCPA Claims**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Because the FDCPA is a remedial statute, its provisions must be liberally construed in favor of the consumer debtor. *See Mammen v. Bronson & Migliaccio, LLP,* 715 F. Supp. 2d 1210, 1213 (M.D. Fla. 2009).

The Defendants argue that the Plaintiff has provided no evidence that she owes a "debt" under the FDCPA. The existence of a "debt" is a threshold requirement for the statute's applicability. *See Hawthorne v. Mac Adjustment,*

---

[1] The Court notes, however, that even if it was to consider these documents in relation to the Defendants' argument that the Plaintiff was the individual who opened the account and incurred the debt, the documents do not provide the "incontrovertible proof" that the Defendants assert. The Plaintiff has testified that she never opened the account or participated in the transactions, which is sufficient to create a dispute of material fact on this issue.

*Inc.*, 140 F.3d 1367, 1370–71 (11th Cir. 1998). Under the FDCPA, "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to a judgment." 15 U.S.C. § 1692a(5). Thus, the FDCPA "appl[ies] only to payment obligations of a (1) *consumer* arising out of a (2) *transaction* in which the money, property, insurance, or services at issue are (3) *primarily for personal, family, or household purposes.*" *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 837 (11th Cir. 2010) (emphasis in original). A consumer is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The Defendants argue that there was no "transaction" in this case and, even if there was a transaction, the Plaintiff cannot show that is was primarily for personal, family, or household purposes.

The Defendants argue that there was no "transaction" within the meaning of the statute because the sale of the iPad which resulted in the charges by eBay creating the alleged debt never actually went through. The "Stephanie Martin" on eBay never sent the iPad to the buyer. First, this argument looks to the wrong "transaction"—rather than focusing on the seller-buyer relationship, the Defendants should look to the relationship between the seller and eBay.

In *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 835 (11th Cir. 2010), the plaintiff sold his laptop to a Craigslist buyer and payment was made through the e-commerce website, Paypal. Paypal's User Agreement stated that it would "reverse" a transaction if a payment by a buyer was invalidated. *Id.* After the exchange of the laptop occurred, Paypal informed the plaintiff that the buyer's payment was fraudulent and requested that the plaintiff repay the funds. *Id.* at 836. The plaintiff refused, and Paypal retained the services of a debt collector to retrieve the funds. *Id.* The plaintiff sued the debt collector under the FDCPA. *Id.* The district court denied the debt collector's motion for summary judgment based on the argument that there was no "transaction" and the debt collector appealed. *Id.*

In reviewing whether a "transaction" occurred within the meaning of the FDCPA, the Eleventh Circuit "recognized the broad scope of 'debt' in the FDCPA," and stating that "'[a]s long as the transaction creates an obligation to pay, a debt is created.'" *Id.* at 837 (quoting *Brown v. Budget Rent–A–Car Sys. Inc.,* 119 F.3d 922, 924 (11th Cir. 1997). "[A]t a minimum, a 'transaction' under the FDCPA must involve some kind of business dealing or other consensual obligation." *Id.* (quoting *Hawthorne,* 140 F.3d at 1371). The Eleventh Circuit then looked at the plaintiff's relationship *with Paypal,* not the laptop buyer,

and found that a transaction existed because the plaintiff entered into an agreement with Paypal to use Paypal's services and that the refund arose directly from the use of those services. *See id.* at 838.

Based on the Court's reasoning in *Oppenheim*, and taking all reasonable inferences in favor of the Plaintiff, there is evidence that a "transaction" occurred in this case. "Stephanie Martin" created an eBay account and contracted to use eBay's services. She then attempted to sell an item through the account; although the sale did not go through, it resulted in charges from eBay.

Even if a "transaction" does exists, a plaintiff must still show that the transaction was "primarily for personal, family, or household purposes" because the FDCPA only protects consumer debt rather than commercial or business debt. *Oppenheim*, 627 F.3d at 837. Here, the Defendants argue that the Plaintiff cannot present any evidence supporting this element because she claims that she has no knowledge of the eBay account. (ECF No. 60 at 10.) The Defendants assert that "[c]ourts dismiss FDCPA claims brought by victims of identity theft because the plaintiffs cannot sustain their burden of proving that the debt was for personal, family or household purposes." *Id.* The Plaintiff responds that victims of identity theft or who are mistakenly pursued by debt collectors are protected "consumers" under the FDCPA and, therefore, her claim should survive. (*See* ECF No. 67 at 7–8.) In essence, the Defendants argue that an identity theft victim can never pursue a claim under the statute, while the Plaintiff argues that providing evidence that a plaintiff is a victim of identity theft is in-and-of-itself sufficient to establish that a "debt" exists.

In order to understand these arguments and the evidence required to establish that a transaction was "primarily for personal, family, or household purposes," it is helpful to examine the main case cited by the Defendants. In *Evenson v. Palisades Collection, LLC*, No. 2:13–cv–1226, 2015 WL 3466936 at *1 (S.D. Ohio June 1, 2015), the plaintiff was contacted by a debt collection agency because she allegedly owed $1,386.05 in relation to an AT&T account. The plaintiff claimed that she never opened the account and was the victim of identity theft. *Id.* The district court granted summary judgment for the debt collector on the plaintiff's FDCPA claim because the plaintiff could not prove the AT&T phone account was for personal, family, or household purposes. *Id.* at *3–4. The plaintiff's evidence was that the AT&T account was in the name of an individual, was attached to a residential address, and that the nature of the account implied personal use. *See id.* The court determined that this information did not raise an issue of material fact because "individuals often carry on commercial activities from residential settings" and "[t]elephones are used by individuals both for business and personal reasons." *Id.*

The *Evenson* court's decision and the Defendants' argument appears to rely on a line of cases that have held that a court should look to the "intended use" or "purpose" behind incurring the debt in order to determine whether the debt was for personal, family, or household purposes. *See, e.g.*, *Horton v. Trans Union, LLC*, No. 12–2072, 2015 WL 1055776 at *5 (E.D. Pa. Mar. 10, 2015) ("A primary focus of this inquiry is the intended use of the debt.") (citing circuit cases). Forcing a victim of identity theft or mistaken identity to prove the intent of an unknown individual would obviously create an insurmountable obstacle in many FDCPA cases. Like the phone line in *Evenson*, *any* purchase could by "used by individuals both for business and personal reasons." For example, diapers—a purchase that is usually viewed as "personal"—would be for business purposes if purchased by a nanny or daycare. Creating such an obstacle for these plaintiffs, however, would contravene both the plain meaning and purpose of the FDCPA.

"By its plain text, the FDCPA encompasses claims brought by individuals subjected to collection efforts for obligations they are falsely alleged to have owed." *Davis v. Midland Funding, LLC*, 41 F. Supp. 3d 919, 924 (E.D. Ca. 2014) (discussing the definitions of "debt" and "consumer"); *see also Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (8th Cir. 2011) (finding that the definition of consumer included "individuals who are mistakenly dunned by debt collectors"). In fact, one of Congress's purposes in creating the FDCPA was to "'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (quoting S. Rep. No. 382, 95th Cong. 2d Sess. at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699). To adopt the Defendants' argument would ignore Congress's intent and essentially read-out the portion of the FDCPA which covers these individuals because, according to the Defendants, identity theft victims would rarely, if ever, be able to sustain a claim.

The Court, however, also declines to adopt the Plaintiff's interpretation of the statute. Citing cases which discuss the definition of "consumer," the Plaintiff argues that she has established a "debt" under the FDCPA. (ECF No. 67 at 7–8); *see also Davis*, 41 F. Supp. 3d at 924–27 (using the statutory interpretation principle of the canon against absurdities to find that a victim of identity theft need not prove that the alleged debt was incurred primarily for personal, family, or household purposes). Just as the Court cannot ignore the statute's plain wording in attempting to protect those individuals who "allegedly" owe debts, the Court cannot ignore the plain definition of "debt" to only include transactions primarily for personal, family or household purposes. Moreover, the Eleventh Circuit has clearly stated that "primarily for personal,

family, or household purposes" is an element for establishing that a debt within the meaning of the FDCPA exists. *Oppenheim*, 627 F.3d at 837.

To resolve the tension between the definition of "debt" and who the FDCPA is meant to protect, the Court returns to the line of cases which state that a court should examine the purpose or intent behind entering into the transaction. Importantly, these cases do not state that intent is the *only* factor to consider. While it is the "primary focus," these cases actually state that determining whether a transaction is primarily for personal, family, or household purposes is a fact-specific analysis and courts should examine "the transaction as a whole" to determine if it was primarily consumer or commercial in nature. *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068–69 (9th Cir. 1992); *see also Hepsen v. J.C. Christensen and Assocs., Inc.*, No. 8:07–cv–1935, 2009 WL 3064865, at *3 (M.D. Fla. Sept. 22, 2009); *Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1204 (W.D. Wash. July 21, 2003) ("[T]he determination of whether a debt is incurred 'primarily for personal, family, or household purposes' is a fact driven one, and should be decided on a case-by-case . . . basis looking at all relevant factors.").

Therefore, while a plaintiff's assertion of identity theft or mistaken identity *alone* is not sufficient to establish a "debt," it *is* a factor to be considered. *See Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 336 n.7 (4th Cir. 2012) (declining to issue an advisory opinion on the evidentiary showing necessary for an identity theft victim to survive summary judgment, but noting that a court should look at "all relevant factors"). Thus, a victim of identity theft or mistaken identity need not present evidence of the intent or purpose of an unknown person in entering the transaction, but should present evidence of the identity theft or mistaken identity along with *some* evidence showing that the debt is consumer in nature. *Cf. McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1274 (M.D. Fla. 2008) (denying summary judgment even though the plaintiff did not remember the charges on her credit card or her purpose for making them because the plaintiff testified that she believed they were for personal or household reasons); *Hansen*, 280 F. Supp. 2d at 1204–05 (finding that the plaintiffs sufficiently established a "debt" when they were pursued for parking charges even though they could not remember their purpose for parking because the debt was paid with personal funds and the nature of the obligation was "a personal one, not a business one"). For example, a plaintiff could provide evidence that the account was a consumer rather than business account. *See Oppenheim*, 627 F.3d at 838–39 (discussing, in dicta, how the plaintiff registered his Paypal account as a "personal account" and the user agreement stated that the account could only be "used for non-business purposes and used primarily for personal, family, or household

purposes."); *Collins v. Portfolio Recovery Assocs. LLC*, No. 2:12–cv–138, 2013 WL 9805805, at*4–5 (E.D. Tenn. June 7, 2013) (denying a motion for summary judgment when an identity theft victim provided evidence that the credit card in question was a consumer card even though she lacked knowledge as to the nature or purpose of the charges on the account because "[t]o hold otherwise would defy common sense, as it would allow debt collectors to utilize unfair collection tactics against already vulnerable individuals").

The Court recognizes that under this approach a victim of identity theft or mistaken identity may still be unable to meet the evidentiary burden; the Court, however, cannot act as the legislature. This approach is not only consistent with the plain meaning of the FDCPA and the cases holding that the court should look at the transaction as a whole, but also with other cases that have considered an identity theft victim's claims on motions for summary judgment. *See Horton*, 2015 WL 1055776 at *5–7 (granting summary judgment because an identity theft victim only cited the debt collector's course of conduct to show that there was a consumer debt, when courts have ruled that course of conduct is irrelevant); *Toroussian v. Asset Acceptance, LLC*, No. 12–03519, 2013 WL 5524831, at *6 (C.D. Cal. Oct. 4, 2013) (granting summary judgment when the only evidence that the plaintiff provided of a consumer debt being that the credit card was opened at a retail bridal shop).

Now that the Court has determined the standard that should be applied, the Court turns to the evidence in this case. Although the Plaintiff has stated that the eBay account is not hers, she has cited no evidence on the record showing that the account or debt is consumer in nature. She has not provided eBay's user agreement or shown that it was a personal rather than business account. In fact, the Plaintiff objected to and forced the Court to exclude any documentation about the eBay account from this Order. Although information may exist in the record creating an issue of material fact on whether this was a consumer transaction, it is not the Court's responsibility to scour the record in order to find such information. *See 2012 Emery Highway, LLC v. Bibb Cnty.*, 377 F. Supp. 2d 1310, 1333 (M.D. Ga. 2005); *Tomasini v. Mt. Sinai Med. Ctr. Of Fla., Inc.*, 315 F. Supp. 2d 1252, 1260 n.11 (S.D. Fla. 2004 (Altonaga, J.). Therefore, because the Plaintiff relies solely on her assertion that the eBay account is not hers and provides no evidence that the debt is for personal, family, or household purposes, the Court must grant summary judgment for the Defendants.

Moreover, even if the Court were to conclude that the FDCPA applies in this case, the Defendants would still be entitled to summary judgment on the majority of the Plaintiff's claims. Nineteen calls over a month, the majority of which went unanswered, without more—for example who was the target of the

call or derogatory language used during the call—is insufficient to sustain a claim for harassment under section 1692d of the FDCPA. *See, e.g., Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322, 1329–30 (M.D. Fla. 2015) (finding that "the frequency and manner of the communications were not abusive or harassing as a matter of law"); *Waite v. Fin. Recovery Servs., Inc.*, No. 09–cv–02336, 2010 WL 5209350, at (M.D. Fla. Dec. 16, 2010) (granting summary judgment even though the plaintiff received twenty–nine calls in February and twenty–seven calls in March because there was no evidence of other egregious conduct); *Saltzman v. I.C. Sys., Inc.,* No. 09–10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009) ("[A] debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages."). The Plaintiff's allegations under § 1692e are similarly insufficient. *See Story v. Midland Funding LLC*, No. 3:15–cv–00194, 2015 WL 7760190, at *6 (D. Ore. Dec. 2, 2015) (holding that collecting on a debt that is not actually owed by the consumer is not a violation of § 1692e); *Mammen*, 715 F. Supp. 2d at 1220 (same when considering an identity theft case). The Plaintiff has submitted no evidence that the Defendants attempts to collect the debt were unconscionable within the meaning of section 1692f. *See Story*, 2015 WL 7760190, at *7. Finally, as to the Plaintiff's claim that the Defendants failed to timely send a validation letter in accordance with section 1692g, the Plaintiff has only presented evidence that the letter was not received. The Defendants have provided evidence that the letter was sent, which is sufficient under the statute. *See Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1021 (9th Cir. 1999) ("We hold that section 1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector need not establish actual receipt by the debtor."); *Perry v. Trident Asset Mgmt., LLC*, No. 14–cv–1004, 2015 WL 417588, at *4 (E.D. Miss. Feb. 2, 2015); *Thomas v. LDG Fin. Servs., II, Inc.*, 463 F. Supp. 2d 1370, 1374 (N.D. Ga. 2006). The Plaintiff has failed to create an issue of material fact regarding whether the letter was sent.[2]

---

[2] In her opposition, the Plaintiff attacks the veracity of the letter and informed the Court that she was seeking the metadata showing when the letter was created. On June 3, 2016, Magistrate Judge Alicia M. Otazo-Reyes held a hearing on the Plaintiff's Motion for Contempt, which argued that the Defendants' productions regarding the metadata were insufficient. The Plaintiff failed to appear at the hearing and Judge Otazo-Reyez, after reviewing the discovery, found the Defendants' productions to be sufficient. (ECF Nos. 90–91.) Therefore, the Plaintiff can no longer rely on her unsupported and conclusory allegation that the verification letter was somehow falsified.

    **d.**    **The FCCPA Claims**

The FCCPA defines "debt" in the same manner as the FDCPA. Fla. Stat. § 559.55(1); *see also Oppenheim*, 627 F.3d at 836–37. Furthermore the FCCPA specifies that, in construing its provisions, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5). Accordingly, the Defendants are entitled to summary judgment on the Plaintiff's FCCPA claims for the same reasons the Court granted summary judgment on the FDCPA claims.

    **e.**    **The TCPA Claims**

The TCPA makes it unlawful to call, other than for emergency purposes or with prior consent, any cell phone using an automatic telephone dialing system ("ATDS") or prerecorded voice. 47 U.S.C. § 227(b)(1)(A)(iii). Thus, to make a claim under the TCPA, a plaintiff must show that "(1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012). The TCPA defines an ATDS as equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator *and* dial the stored numbers. 47 U.S.C. § 227(a)(1).

Juarez testified that Allied does not use auto dialers and that all calls are dialed manually. (ECF No. 60–7, Juarez Dep. 43:15–25). The Plaintiff, however, alleges that Allied violated the TCPA because when she picked up one of the calls, she "heard an auto dialer." (ECF No. 60–2, Martin Dep. 86:9–14.) Courts have routinely rejected similar claims by plaintiffs who try to maintain a TCPA claim on the belief that an ATDS was used based on "clicks," "delays," or "dead air" on the other end of the line. *See Norman v. Allianceone Receivables Mgmt., Inc.*, No. 15–1780, 2015 WL 9286778, at *1–2 (7th Cir. Dec. 22, 2015) (finding that "dead air" was insufficient to create an issue of material fact even though auto dialers frequently result in "dead air"); *Estrella v. Ltd. Fin. Servs., LP*, No. 14–cv–2624, 2015 WL 6742062, at *3 (M.D. Fla. Nov. 2, 2015) ("[T]here is no foundation or support for Plaintiff's conclusion that 'clicks and delays' and 'prolonged silences' means that an ATDS or predictive dialer was being used to place the calls."); *Gaza v. Ltd. Fin. Servs., LP*, No. 14–cv–1012, 2015 WL 5009741, at * (M.D. Fla. Aug. 24, 2015) (determining that the plaintiff failed to rebut testimony that all calls were placed manually); *Dennis v. Reg. Adjustment Bureau, Inc.*, No. 09–61484–civ, 2010 WL 3359369, at *3 (S.D. Fla. July 7, 2010) (Ungaro, J.) (holding that the plaintiff's belief that a call sounded

prerecorded could not defeat summary judgment). The Plaintiff's factual allegations are even more conclusory in this case, and "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Dennis*, 2010 WL 3359369, at *3. Accordingly, the Court grants summary judgment for Allied on this claim.

### 4. The Defendants' Motions to Supplement

The Defendants have moved for Rule 11 Sanctions for pursuit of a frivolous claim. (ECF No. 58.) The Defendants allege that the Plaintiff is truly the individual who opened and used the eBay account, and that the Plaintiff and her attorneys were aware of this fact during the litigation, but refused to dismiss the case. (ECF No. 58 at 1.) As previously discussed, after filing the original motion, the Defendants filed two motions to supplement containing additional evidence. (ECF Nos. 65, 77).

Although the Defendants complied with Rule 11's safe harbor provision when filing their original motion, they failed to comply when submitting their supplemental evidence. *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). "The purpose of the safe harbor provision is to allow the party against whom sanctions are sought to withdraw the challenged document(s)." *Mirabilis Ventures, Inc. v. Palaxar Grp., LLC*, No. 07–cv–1788, 2010 WL 5582878, at *8 (M.D. Fla. Dec. 15, 2010). Courts generally strictly construe Rule 11's procedural requirements. *See Miller v. RelationServe, Inc.*, No. 05–61944–civ, 2006 WL 5849318, at *5 (S.D. Fla. Dec. 1, 2006) (Torres, Mag. J.); *In re Kirk-Murphy Holding, Inc.*, 313 B.R. 918, 920–21 (N.D. Fla. 2004).

Therefore, the Court will deny the motions to supplement for failing to comply with the procedural requirements of Rule 11. *See Mirabilis Ventures, Inc.*, 2010 WL 5582878, at *12 (denying motion to supplement that failed to comply with safe harbor requirements); *Zhu v. Fed. Housing Fin. Bd.*, No. 04–2539, 2007 WL 675646, at *4 (D. Kan. Mar. 1, 2007) ("Because defendant did not file its renewed motion for sanctions as a separate motion and has provided no evidence that it complied with the Rule 11 safe harbor provision, the Court overrules defendant's motion for sanctions."). Because the Court is granting summary judgment for the Defendants, allowing them to refile their supplements after complying with the safe harbor provision would be futile— the Plaintiff can no longer withdraw the allegedly frivolous claims. Therefore,

the Defendants Rule 11 Motion (ECF No. 58) will proceed based solely on the evidence attached to that filing.

**5.     Conclusion**

Because the Plaintiff has not presented evidence sufficient to establish that there is a "debt" under the FDCPA or FCCPA and only presents a conclusory belief that Allied used an ATDS device under the TCPA, the Court **grants** the Defendants' motion for summary judgment (ECF No. 60). Further, the Court **denies** the Plaintiff's motion to voluntarily dismiss (ECF No. 85) and **denies** the Defendants' motions to supplement (ECF Nos. 65, 77).

**Done and Ordered**, at Miami, Florida, on June 16, 2016.

_____
Robert N. Scola, Jr.
United States District Judge